UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TONYA R. AKINS, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:20-CV-714 SRW |
| ) | |
| ANDREW M. SAUL,[1] ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant(s). ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on review of an adverse ruling by the Social Security Administration. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Plaintiff filed a Brief in Support of the Complaint. ECF No. 19. Defendant filed a Brief in Support of the Answer. ECF No. 28. The Court has reviewed the parties' briefs and the entire administrative record, including the transcripts and medical evidence. Based on the following, the Court will reverse the Commissioner's denial of Plaintiff's application and remand the case for further proceedings.

I.      **Factual and Procedural Background**

On May 2, 2016, Plaintiff Tonya R. Akins protectively filed applications for disability insurance benefits ("DIB") under Title II, 42 U.S.C. §§ 401, *et seq.* and supplemental security

---

[1] At the time this case was filed, Andrew M. Saul was the Acting Commissioner of Social Security. Kilolo Kijakazi became the Commissioner of Social Security on July 9, 2021. When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party. Fed. R. Civ. P. 25(d). Later proceedings should be in the substituted party's name, and the Court may order substitution at any time. *Id.* The Court will order the Clerk of Court to substitute Kilolo Kijakazi for Andrew M. Saul in this matter.

1

income (SSI) under Title XVI, 42 U.S.C. §§ 1381, *et seq.* Tr. 125-39. Plaintiff's application was denied on initial consideration, and she requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 59-84.

Plaintiff, without counsel, appeared for a hearing on May 9, 2018. Tr. 24-58. Plaintiff testified concerning her disability, daily activities, functional limitations, and past work. *Id*. The ALJ also heard testimony from vocational expert ("VE") Barbara Meyers. Tr. 47-56. On November 5, 2018 the ALJ issued an unfavorable decision finding Plaintiff not disabled. Tr. 8-22. Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. On April 22, 2020, the Appeals Council denied Plaintiff's request for review. Tr. 1-5. Accordingly, the ALJ's decision stands as the Commissioner's final decision.

With regard to Plaintiff's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective statements of facts and responses. The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

**II.     Legal Standard**

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether "the claimant has a severe impairment . . . which significantly limits [claimant's] physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (quoting 20 C.F.R. § 416.920(c)). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative

3

assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016).

Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If the ALJ determines the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work which exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work which exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary

4

sufficiency is not high." *Id*. Under this test, a court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

### III. The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ found here that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of December 1, 2014. Tr. 14. Plaintiff has the severe impairments of suprasellar tumor with residual of left homonymous hemianopia, obesity, diabetes, and seizure disorder. *Id.* Plaintiff did not have an impairment or combination of impairments which meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. Tr. 14-15. The ALJ found Plaintiff had the following RFC:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(a) except: The [Plaintiff] may occasionally use ramps and stairs. She may never work at unprotected dangerous heights and around unprotected dangerous machinery. She is limited to no operation of motor vehicles, working alone around open bodies of water, or around open flames. The claimant is limited to occasional stooping, kneeling, crouching, and crawling.

Tr. 15-17. The ALJ found Plaintiff was unable to perform her past relevant work as a punch press operator or waitress. Tr. 17-18. The ALJ further found Plaintiff was born on October 2, 1968 and was 46 years old, which is defined as a younger individual 18-49, on the alleged disability onset date, but her age category changed on October 2, 2018 to closely approaching

5

advanced age. Tr. 18. The ALJ indicated Plaintiff has at least a high school education and is able to communicate in English. *Id.* The ALJ determined Plaintiff could not transfer job skills from her past prior work. *Id*. Relying on the testimony of the VE and considering Plaintiff's age, education, work experience and RFC, the ALJ found there were jobs existing in significant numbers in the national economy which the Plaintiff could perform, including representative occupations such as cashier (*Dictionary of Occupational Titles* ("*DOT*") No. 211.462-010, with approximately 800,000 positions nationally) and merchandise marker (*DOT* No. 209.587-034, with approximately 334,000 positions nationally). Tr. 18-19. The ALJ concluded Plaintiff was not under a disability from December 1, 2014 through November 5, 2018. Tr. 24.

## IV.     Discussion

Plaintiff asserts two arguments in support of remand: (1) the Appeals Council failed to exhibit post-hearing evidence; and (2) the ALJ failed to fully develop the record by not ordering an updated consultative examination or seeking additional medical evidence.

### A.  Appeals Council's Review of Post-Hearing Medical Evidence

On May 9, 2018, Plaintiff appeared for a hearing before the ALJ without counsel. Tr. 24-58. The ALJ offered Plaintiff the option of rescheduling the hearing to give her the opportunity to obtain counsel, but Plaintiff indicated a desire to proceed. Tr. 27. On November 5, 2018, the ALJ issued an unfavorable decision finding Plaintiff not disabled. Tr. 8-22.

Plaintiff subsequently obtained counsel and filed a request for review with the Appeals Council, which included the submission of additional medical evidence. Tr. 122-24. On April 22, 2020, the Appeals Council denied Plaintiff's request for review. Tr. 1-5. The Appeals Council addressed the additional medical evidence, in relevant part, as follows:

> You submitted records from John C. Murphy Health Center, dated May 18, 2018 to November 19, 2018 (25 pages); and SLU Care Physician Group, dated May 3,

6

>  2018 to September 27, 2018 (115 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence.
>
>  You also submitted records from John C. Murphy Health Center, dated February 21, 2019 to May 5, 2019 (10 pages); and SLU Care Physician Group, dated March 5, 2019 to June 10, 2019 (118 pages). The Administrative Law Judge decided your case through November 5, 2018. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before November 5, 2018.
>
>  If you want us to consider whether you were disabled after November 5, 2018, you need to apply again.

Tr. 2.

Plaintiff does not take issue with the decision of the Appeals Council to decline consideration of the records dated after November 5, 2018. Plaintiff challenges the decision of the Appeals Council to not exhibit the records within the relevant time period. Plaintiff argues, because "the Appeals Council refused to exhibit 150 pages of new and material evidence, this Court cannot determine whether the administrative decision is supported by substantial evidence." ECF No. 19 at 5.

After Plaintiff asserted the above argument in her Brief in Support of the Complaint, the Commissioner filed a Supplemental Transcript with the Court, which included the additional medical evidence Plaintiff submitted to the Appeals Council but was not exhibited. *See* ECF No. 27. The Commissioner acknowledged in his Brief in Support of the Answer that Plaintiff was "correct in her assertion that the new evidence submitted to the Appeals Council should have been included with the administrative record even though the Appeals Council determined that the new evidence from the relevant period did not provide a reasonable probability that it would change the outcome of the ALJ's decision." ECF No. 28 at 4. However, the Commissioner

7

asserts that because the mistake was rectified, remand would not be appropriate. Plaintiff did not file a Reply Brief.

The Court agrees with Plaintiff that the Appeals Council incorrectly failed to exhibit the medical evidence dated prior to November 5, 2018. New and material evidence submitted to the Appeals Council that relates to the period before the date of the ALJ's decision becomes part of the administrative record. *See Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007). Notwithstanding such a requirement, the Commissioner fixed the error by filing a Supplemental Transcript in this case, which includes the medical evidence submitted to and reviewed by the Appeals Council. ECF No. 27.

As a result of the Commissioner's supplemental filing, the Court is now equipped with the entire record to determine whether the administrative decision was supported by substantial evidence. The Court, therefore, finds it inappropriate to remand based on Plaintiff's argument that this Court would be unable to review the administrative decision. The Court presently has access to the entire record, including the post-hearing medical evidence, which erroneously was not exhibited by the Appeals Council. Remand would only be appropriate if substantial evidence did not support the ALJ's decision. *Bergmann v. Apfel*, 207 F.3d 1065, 1068 (8th Cir. 2000) (in cases where additional evidence was submitted after hearing and considered by the Appeals Council, the reviewing court's role is to determine whether the ALJ's decision is supported by the record as a whole, which now includes new evidence). Whether the ALJ's determination was supported by substantial evidence will be addressed below.

### B. The ALJ's Development of the Record

Plaintiff argues the ALJ erred by failing to fully and fairly develop the record which resulted in an improper RFC determination that Plaintiff could perform light work with

limitations. Plaintiff argues the record was not fully developed because the ALJ relied on the August 16, 2016 opinion of State agency physician, Dr. Kenneth Smith, which was made prior to her seizure disorder diagnosis and before she gained sixty pounds. Plaintiff also points to the fact that she turned 50 years old on October 2, 2018, one month before the ALJ issued the decision. Because she changed age categories during the pendency of her claim from a "younger individual" to "closely approaching advanced age," Plaintiff argues Dr. Smith's RFC opinion was outdated and the ALJ should have obtained additional medical evidence addressing her ability to function in the workplace on or around October 2, 2018.

In making the RFC determination, the ALJ first considered Plaintiff's subjective complaints resulting from "continued seizures, eye pain, side effects from her diabetes medicines, pain in her knees, and pain in her heels." Tr. 16. The ALJ cited to Plaintiff's hearing testimony in which she stated that "she can only be on her feet [for] about 15 minutes, taking a bath makes her dizzy, and her legs get cramped and she must straighten her legs occasionally to keep them from cramping." Tr. 16, 43-46. Plaintiff testified she gained 60 to 70 pounds due to "diabetes medicines and lack of energy" and used a cane "on days that were cold or rainy and she ha[d] to walk a ways." Tr. 16, 39-40, 42. The ALJ acknowledged her reports of continued head tenderness, as well as an inability to prepare meals because she would burn the food and an inability to do laundry because she could not descend a flight of stairs to her laundry room. Tr. 16, 43-44, 46. The ALJ noted she was able to play video games on her phone and watch television, which Plaintiff described as her only hobbies. Tr. 16, 44. The ALJ found Plaintiff's self-reported symptoms to be inconsistent with the medical evidence. Tr. 16.

The ALJ considered Plaintiff's history of obesity which predated her alleged onset date, and noted her weight increased from 250 pounds on October 28, 2015 to 313 pounds on

9

December 14, 2017. Tr. 16, 263, 532. Despite her weight gain, the ALJ found the record lacked persuasive evidence to support a conclusion that her obesity resulted in significantly reduced respiratory capacity, skin disorders, edema, calluses on her feet, or cardiac-related impairments. The ALJ noted that none of her treating physicians indicated her obesity caused severe symptoms or functional limitations. Tr. 16.

The ALJ cited to a January 8, 2015 treatment note from Plaintiff's neurosurgeon, Dr. Richard Bucholz, who primarily treated the suprasellar mass located in her head. Tr. 16, 372-73. During the visit, Plaintiff reported "some new occipital head pain but no other problems." Tr. 372. Dr. Bucholz observed Plaintiff "to be asymptomatic from this mass" and recommended "continued conservative management." Tr. 373. The ALJ noted on January 14, 2016, Plaintiff reported occasional headaches and decreased field of vision, but by April 15, 2016 she was complaining of increased symptoms, including progressive fatigue, daily bifrontal headaches, and worsening vision in her right eye. Tr. 16, 250, 353, 420. Due to these complaints, Plaintiff underwent a craniotomy and resection on June 10, 2016 to remove the majority of the mass. Tr. 16, 426, 432, 475, 581. On June 30, 2016, Plaintiff reported "jaw twitching," which caused "her teeth to chatter occasionally during speech and frequently when eating food." Tr. 16, 432. An electroencephalogram was ordered, but it did not reveal any epileptiform activity. *Id.*

The ALJ considered MRI results from April and November 2017, which showed minimal or no change in the size of the masses. Tr. 17. The November 2017 report specifically indicated an "[u]nchanged size of a mildly enhancing suprasellar/hypothalamic mass, most likely representing residual granulosa cell tumor" and a "[m]inimally increased size of a mass centered in the right aspect of the sella, which may represent a second granulosa cell tumor or a pituitary adenoma with internal hemorrhage." Tr. 17, 497.

10

The ALJ cited to the July 28, 2016 treatment notes from Plaintiff's ophthalmologist, Dr. Sophia Chung, in which she diagnosed Plaintiff with "a new left homonymous hemianopia ("LHH") that [was] incongruous suggesting right optic tract disease" as well as "right IIIrd nerve paresis." Tr. 17, 475-76, 601-02. Dr. Chung directed Plaintiff to refrain from driving for six months. *Id.* On November 28, 2016, Dr. Chung opined Plaintiff "made complete recovery of her right IIIrd nerve palsy" and "ha[d] improvement of her LHH although still present." Tr. 17, 591. Dr. Chung wrote Plaintiff's improvement would "allow her to drive legally given the peripheral field requirement," but renewed the driving limitation because she was not yet cleared by her neurosurgeon, and the LHH would require her to "exercise extreme caution driving." Tr. 17, 591.

The ALJ afforded little weight to Dr. Chung's opinion that driving would be a persistent limitation because Plaintiff testified she had resumed driving. Tr. 17. The ALJ determined Plaintiff's testimony evidenced her "temporary [driving] limitations had expired and the [Plaintiff] had returned to normal activity." *Id.* The Court notes, although the ALJ gave Dr. Chung's opinion regarding the operation of a motor vehicle little weight, the ALJ ultimately included a limitation in her RFC of "limited to no operation of motor vehicles." Tr. 15.

As to the severe impairment of diabetes, the ALJ noted that on July 28, 2016, Plaintiff reported her blood sugar to be 510 in the morning and 445 in the evening. Tr. 17, 469. By August of 2016, however, Plaintiff lowered her sugar levels to the 147-228 range due to close monitoring and treatment with insulin. Tr. 17, 562, 565. The ALJ acknowledged when Plaintiff was not on insulin, her blood sugar would increase to 500. *Id.*

In December of 2017, Plaintiff reported she had experienced a seizure but did not go to the hospital. Tr. 17, 529-30. On March 29, 2018, Plaintiff was diagnosed with "partial idiopathic epilepsy with seizures of localized onset, not intractable, without status epilepticus." Tr. 488.

11

Plaintiff was prescribed LevETIRAcetam, commonly known as Keppra, for treatment. *Id.* On April 25, 2018, an electroencephalogram ("EEG") was ordered. Tr. 17, 495. The results were abnormal due to "[r]are right frontal sharply contoured waves which can be consistent with cortical irritability." *Id.* On May 3, 2018, Plaintiff reported experiencing another seizure. Tr. 17, 494.

In formulating the RFC, the ALJ considered the August 16, 2016 opinion of state disability doctor and consultative examiner, Kenneth Smith, M.D., who determined Plaintiff could perform a light range of work with restrictions. Tr. 17, 61-65, 71-73. Dr. Smith opined Plaintiff was not disabled but had limited left field of vision and could only occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for a total of 6 hours in an 8-hour workday; sit more than 6 hours on a sustained basis in an 8-hour workday; occasionally climb ramps or stairs; occasionally climb ladders, ropes, or scaffolds; frequently balance; and occasionally stoop, kneel, crouch, or crawl. Tr. 63-64. The ALJ assigned partial weight to Dr. Smith's opinion, stating: "While the undersigned finds that the lifting restriction is consistent with the medical records, the [Plaintiff's] severe medical conditions do not support occasionally working in dangerous environments. As such, this portion of his opinion was inconsistent with the medical records[.]" Tr. 17.

In the decision, the ALJ noted Plaintiff was born on October 2, 1986 and was 46 years old, defined as a "younger individual age 18-49," on the alleged disability onset date. Tr. 18. The ALJ acknowledged Plaintiff changed age categories to "closely approaching advanced age" as of October 2, 2018, when she turned 50 years old.[2] *Id.* In addressing Plaintiff's change in age categories, the ALJ cited to 20 C.F.R. §§ 404.1563, which requires the Commissioner to use

---

[2] Age 50 serves as a demarcation line between "younger person" (less than 50 years of age) and "person closely approaching advanced age" (50–54 years of age) for purposes of analyzing disability claims.

each of the age categories that applies to Plaintiff during the period for which the Commissioner must determine if Plaintiff is disabled. S*ee Ramsey v. Soc. Sec. Admin.*, No. 2016 WL 727547, at *6, n.5 (M.D. Tenn. Feb. 24, 2016) (a citation to 20 C.F.R. § 404.1563 indicates the ALJ "was plainly aware" of Plaintiff's date of birth, and "[t]he fact that the ALJ made such findings while referring to § 404.1563 has been noted to provide some indication that the ALJ considered the arguably borderline age situation"), *report and recommendation adopted by*, 2016 WL 1044973 (M.D. Tenn. Mar. 16, 2016).

Plaintiff does not argue the ALJ failed to consider her new age category. Instead, Plaintiff asserts the ALJ should have obtained additional medical evidence addressing her ability to function in the workplace on or around October 2, 2018, the date she changed age categories. Plaintiff further argues Dr. Smith's RFC assessment was outdated because it was opined prior to her change in age categories, and prior to her seizure disorder diagnosis and sixty-pound weight gain.

An ALJ has a duty to fully develop the record, but this duty only arises if a crucial issue is undeveloped. *Ellis v. Barnhart,* 392 F.3d 988, 994 (8th Cir. 2005). This duty is not "never-ending," and an ALJ is not required to disprove every possible impairment. *Barret v. Shalala*, 39 F.3d 1019, 1023 (8th Cir. 1994). The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled. *Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). Social Security regulations do not require the ALJ to order a consultative evaluation of every alleged impairment but does grant the ALJ authority to do so if the existing medical sources do not contain sufficient evidence to make a determination. *See Matthews v. Bowen*, 879 F.2d 422, 424 (8th Cir. 1989).

A plaintiff's failure to provide evidence in support of her alleged work-related restrictions "should not be held against the ALJ when there is medical evidence that supports the ALJ's decision." *Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008). Additionally, "reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995) (citing *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993)). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

The Court finds the ALJ did not err by failing to obtain additional medical evidence regarding her obesity. On August 16, 2016, Dr. Smith formulated his consultative opinion regarding Plaintiff's RFC. Plaintiff self-reported her weight as 250 pounds. Tr. 59, 68. Although Dr. Smith did not list obesity as a severe impairment, he explicitly considered her weight in relation to her exertional limitations. Tr. 63-64, 72-73.

Subsequent to Dr. Smith's evaluation, the medical record indicates Plaintiff weighed 311 pounds by November 20, 2017. Despite her weight gain, a physical examination revealed normal results, including full range of motion and no presence of edema. Tr. 538. On December 14, 2017, Plaintiff was encouraged to exercise 30 minutes per day to "maintain health," but no serious concerns were noted about her weight. Tr. 531-33. On March 28, 2018, Plaintiff weighed 308 pounds, and she was advised to follow up with her primary care physician to manage her abnormal body mass index. Tr. 488-89. On May 3, 2018, Plaintiff again exhibited a normal physical examination with no pedal edema, clubbing or cyanosis. Tr. 494. Included within the supplemental transcript is an August 12, 2018 treatment note in which Plaintiff's weight was recorded as 319 pounds. Tr. 765. Plaintiff's chest, lung, and cardiovascular examinations were

normal, and she exhibited no edema, although it was noted she had "stiff knees with crepitus." Tr. 765-66.

Based on substantial evidence in the record, the Court cannot find that the ALJ erred in determining Plaintiff's obesity did not result in severe symptoms or limitations. Although Plaintiff testified that she used a cane during inclement weather, a physician did not indicate a medical necessity for an ambulation device. The treatment recommendations provided to her for obesity were conservative, and her physical examinations were predominately normal other than one report of stiff knees. The ALJ accounted for any reduced mobility due to her obesity by limiting her to occasional use of ramps and stairs, and occasional stooping, kneeling, crouching, and crawling. Tr. 15.

"The ALJ did not have a duty to seek additional medical evidence, because there were no undeveloped issues" as to her obesity. *Salmon v. Saul*, No. 4:19 CV 228 ACL, 2020 WL 1479145, at *8 (E.D. Mo. Mar. 26, 2020) (citing *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 372 (8th Cir. 2016)). *See also McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011) ("The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled."); *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995) ("[a]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision"); *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009) (when an ALJ references the plaintiff's obesity during the claim evaluation process, such review may be sufficient to avoid reversal). Based on the review of the evidence in the record as a whole, including the supplemental transcript, the Court finds the ALJ met his obligation to develop the record regarding Plaintiff's obesity.

15

However, the Court finds the ALJ did not fully develop the record as to her seizure disorder. Dr. Smith's RFC assessment was formulated on August 16, 2016, which was prior to her seizure disorder diagnosis. Plaintiff reported experiencing a seizure in December of 2017. Tr. 17, 34, 529-30. Plaintiff contacted her neurosurgeon but could not get an appointment until March of 2018. Tr. 34-35. Plaintiff was advised to begin Keppra, an anti-seizure medication, for treatment. Tr. 529-30. On March 29, 2018, Plaintiff appeared for her neurological appointment and reported experiencing two additional seizures. Tr. 35. Plaintiff was diagnosed with "partial idiopathic epilepsy with seizures of localized onset, not intractable, without status epilepticus." Tr. 488.

On April 25, 2018, an electroencephalogram ("EEG") was ordered. Tr. 17, 495. The results were abnormal due to "[r]are right frontal sharply contoured waves which can be consistent with cortical irritability." *Id.* On May 3, 2018, a treatment note indicated Plaintiff experienced a "[r]ecent seizure" and was "back on Keppra." Tr. 17, 494. It is unclear from the record why Plaintiff was off of her prescribed medication prior to the May 3rd appointment. Within the supplemental transcript, is an April 3, 2019 treatment note indicating Plaintiff had not experienced a seizure for 13 months, or since March of 2018. Tr. 663. Notably a different record indicated contradictory information, stating Plaintiff experienced a seizure on May 3, 2018. Tr. 17, 494.

Plaintiff argues the ALJ failed to fully develop the medical record by not ordering a consultative examination to evaluate her new diagnosis of seizure disorder. The Court agrees. As a general matter, the RFC should not be based on outdated medical opinions. "[A]n ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v.*

16

*Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018) (citing *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016)). Dr. Smith formulated his RFC opinion in August of 2016. Plaintiff was diagnosed with seizure disorder in March of 2018. Dr. Smith did not have the benefit of reviewing Plaintiff's records or evaluating her after she was diagnosed with seizure disorder. This new diagnosis presented an ambiguity in the record concerning the continued applicability of the RFC assessment rendered by Dr. Smith regarding Plaintiff's physical abilities. *See* 20 C.F.R. § 416.919a(b)(4) (providing that a consultative examination may be required when "[t]here is an indication of a change in your condition that is likely to affect your ability to work, but the current severity of your impairment is not established"). Although Plaintiff's treating physicians did not explicitly indicate any work-related limitations due to her seizure disorder diagnosis, none of them submitted an RFC assessment to address such a possibility.

      The Commissioner argues the ALJ may rely on relevant medical opinions no matter when they were issued if they are consistent with the evidence in the record. ECF No. 28 at 10 (citing *Jones v. Colvin*, 2014 WL 4594812, at *3 (N.D. Ohio Sept. 12, 2014) (quoting *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3rd Cir. 2011)). While the Court agrees with this general proposition, it does not apply in the instant case. The impairments Dr. Smith reviewed in his 2016 consultative examination are *not* consistent with the Plaintiff's subsequent medical records because she was diagnosed with the severe impairment of seizure disorder in 2017 and reported multiple instances of seizure activity. *See e.g.*, *Ivey v. Comm'r of Soc. Sec.*, 2020 WL 5046261, at *4 (W.D.N.Y. Aug. 27, 2020) ("a new diagnosis of carpel tunnel syndrome rendered stale the consultative examiner's opinion concerning the plaintiff's hands and fingers); *McDade v. Saul*, 2021 WL 1842024, at *3 (W.D. Ark. May 7, 2021) (remand for the reason that the opinions of the nonexamining state agency medical consultants were rendered before new

17

evidence regarding the severity of plaintiff's condition became part of the record); *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018) (remanding where a later diagnostic report "changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment").

The Court finds the instant record lacks an RFC assessment of Plaintiff's ability to work subsequent to her seizure disorder diagnosis. The ALJ's failure to develop the record was unfair and prejudicial to Plaintiff. Therefore, the ALJ's RFC determination is not supported by substantial evidence in the record as a whole.

On remand, the ALJ should seek an updated medical opinion regarding how her March 29, 2018 seizure disorder diagnosis affects her RFC, if at all, which was a consideration not included in Dr. Smith's August 16, 2016 consultative examination. With this new medical evidence, the ALJ should then re-evaluate Plaintiff's RFC and specifically list in a hypothetical to a vocational expert any limitations which are indicated in the RFC assessments and supported by substantial evidence.

Additionally, on remand the ALJ should also explicitly address whether her change in age categories during the pendency of the claim, from "younger individual" to "closely approaching advanced age," affected her ability to function in the workplace. The ALJ's determination on this issue must be supported by substantial evidence in the record. The Court, however, does not agree with Plaintiff's argument that the ALJ was required to seek a consultative examination simply because she changed age categories within the pendency of the disability claim. *See Cheeks v. Colvin*, 2014 WL 4686485, at *5 (N.D. Ala. Sept. 15, 2014) (rejecting argument that ALJ failed to develop the record by failing to obtain an opinion from a medical expert or consultative examination because of recent change of age category).

18

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner of Social Security is **REVERSED,** and this case is **REMANDED** under 42 U.S.C. 1383(c)(3) and Sentence Four of 42 U.S.C. § 405(g) for reconsideration and further proceedings consistent with this opinion.

**IT IS FURTHER ORDERED** that the Clerk of Court shall substitute Kilolo Kijakazi for Andrew M. Saul in the court record of this case.

So Ordered this 10th day of January, 2022.

*/s/ Stephen R. Welby*
STEPHEN R. WELBY
UNITED STATES MAGISTRATE JUDGE